1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6

7    ANDRE PETRE,                               Case No.  15-cv-03344-JSC
8                    Plaintiff,
                                                **ORDER GRANTING IN PART MOTION**
9         v.                                    **TO DISMISS**

10   CITY OF SAN LEANDRO, et al.,               Re: Dkt. No. 18
11                  Defendants.
12

13        Plaintiff Andre Petre ("Petre"), the cousin, successor-in-interest, and heir to the estate of

14   decedent Stefan Anton ("Decedent"), filed this civil action against Defendants the City of San

15   Leandro (the "City"), San Leandro Police Chief Sandra Spagnoli ("Chief Spagnoli"), and officers

16   Timothy Perry ("Perry") and Warren DeGuzman ("DeGuzman" and, together, the "Officer

17   Defendants"), alleging that Decedent was subject to excessive force during his arrest following a

18   traffic stop.  In the First Amended Complaint ("FAC"), Plaintiff brings a Section 1983 claim

19   against the officers and Section 1983 municipal liability claim against the City and Chief

20   Spagnoli.  (Dkt. No. 17.)[1]  Now pending before the Court is Defendants' motion to dismiss for

21   failure to state a claim.  Having considered the parties' submissions, the Court concludes that oral

22   argument is unnecessary, *see* N.D. Cal. L.R. 7-1(b), and GRANTS IN PART Defendants' motion

23   as set forth below.

24                            **COMPLAINT ALLEGATIONS**

25        San Leandro police officers arrested Decedent following a traffic stop on July 21, 2013.

26   (Dkt. No. 17 ¶ 6.)  According to the incident report, Decedent was pulled over for having expired

27   ───────────────

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

registration tags.  (*Id.*)  The Officer Defendants then removed Decedent from the vehicle and, after attempting to shoot him with a Taser, wrestled him to the ground into a face-down prone position and restrained him.  (*Id.*)  Eyewitnesses stated that the Officer Defendants hit Decedent and hit his head on the ground.  (*Id.*)  The incident report further states that Decedent stopped breathing while the Officer Defendants were restraining him.  (*Id.*)  Following his arrest, paramedics brought Decedent, unconscious, to the Intensive Care Unit at St. Rose Hospital in Hayward, California.  (*Id.*)  He never regained consciousness.  (*Id.*)  Decedent died on August 19, 2013.  (*Id.*)

The incident report itself was withheld as "on hold" or "under investigation" until Plaintiff initiated this civil action.  (*Id.*)  The report references supplemental reports with further information, but those reports still have not been provided to Plaintiff. (*Id.*)  The coroner's investigation report was likely withheld at the request of the San Leandro Police Department.  (*Id.*)  At some point it was released, and it states that a "control hold" was placed on Decedent, whose causes of death include "cerebral insufficiency," "anoxic encephalopathy," and "cardiac arrest occurring during physical altercation and physical restraint."  (*Id.*)  A toxicology scan of Decedent was negative for the presence of drugs or alcohol.  (*Id.*)

Decedent died due to the excessive and unlawful force used by the Officer Defendants and the failure of the City to reasonably train its officers in the appropriate use of force, including limitations on use of control holds, carotid restraint, and other methods of restraint that may result in "positional asphyxia."  (*Id.*)  Plaintiff further alleges that the City's withholding of the incident reports and coroner's investigation report constituted ratification and implicit authorization of the wrongful and excessive force used.

Plaintiff brings two causes of action in the FAC.  The first is against the Officer Defendants.  Plaintiff seeks damages stemming from the Officer Defendants' deprivation of Decedent's right not to be deprived of liberty and property without due process of law, the right to be free from the use of excessive force and unlawful seizure, and the right to be free from preconviction punishment.  (*Id.* ¶ 11.)  The second cause of action is against the City and Chief Spagnoli.  Plaintiff alleges that Chief Spagnoli and other high-ranking police supervisors "knew of the repeated misconduct of defendants Perry and DeGuzman" and were or should have been aware

1   of prior instances of people dying during the course of arrests involving improper use of control

2   holds, carotid restraints, and other restraining tactics that resulted in positional asphyxiation.  (*Id.*

3   ¶ 14.)  Plaintiff alleges that Chief Spagnoli and the City had a custom and policy of this type of

4   police misconduct and also "ratified, condoned such conduct and failed to ascertain compliance by

5   its officers with standards for arrest and detention" which constitutes deliberate indifference to

6   citizens' constitutional right not to be subjected to unlawful use of force and unreasonable

7   searches.  (*Id.* ¶ 15.)  Plaintiff seeks $5,000,000 in general damages, as well as punitive damages

8   against the individual officers.  (*Id.* at 7.)

9                           **LEGAL STANDARD**

10         To survive a Rule 12(b)(6) challenge a complaint must allege "enough facts to state a

11   claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

12   A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer

13   possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

14   (2009) (internal quotation marks and citations omitted).  For purposes of ruling on

15   a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and

16   construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St.*

17   *Paul Fire & Mar. Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on

18   either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a

19   cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.

20   2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319,

21   326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue

22   of law.").

23         Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under

24   which a party is only required to make "a short and plain statement of the claim showing that the

25   pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic

26   recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting

27   *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations of law and unwarranted inferences are

28   insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.

1   2004); *see also Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint

2   or counterclaim may not simply recite the elements of a cause of action, but must contain

3   sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

4   defend itself effectively").  The court must be able to "draw the reasonable inference that the

5   defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  "Determining whether a

6   complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

7   reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

8          If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

9   request to amend the pleading was made, unless it determines that the pleading could not possibly

10  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

11  banc) (internal quotation marks and citations omitted).

12                                  **DISCUSSION**

13  **A.      First Cause of Action**

14          1.      *Whether the Claim is Time-Barred*

15          Under California law, which governs the applicable statute of limitations, a two-year

16  statute of limitations applies to personal injury claims, including Section 1983 actions.  Cal. Code

17  Civ. Proc. § 335.1; *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir.

18  2011) ("The statute of limitations applicable to an action pursuant to 42 U.S.C. § 1983 is the

19  personal injury statute of limitations of the state in which the cause of action arose."); *see, e.g.*,

20  *Thompson v. City of Shasta Lake*, 314 F. Supp. 2d 1017, 1023 (E.D. Cal. 2004).  Federal law

21  determines when that statutory clock begins to run for a Section 1983 claim in federal court.

22  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).  Under federal law the so-called

23  "discovery rule" provides that "a claim accrues when the plaintiff knows or has reason to know of

24  the injury which is the basis of the action." *Id.* at 991-92.

25          The injuries related to Decedent's arrest occurred on July 21, 2013, and he died on August

26  19, 2013.  (Dkt. No. 17 ¶ 9.)  The statutory period expired two years after Decedent's death, on

27  August 19, 2015.  *See* Cal. Code Civ. Proc. § 335.1.  Plaintiff filed the instant FAC approximately

28  two months later, on October 24, 2015.  (Dkt. No. 17.)  However, Plaintiff filed his initial

4

1    complaint on July 20, 2015, which would have been timely.

2        The question is thus whether Plaintiff's FAC claim against the Officer Defendants relates

3    back to the initial complaint.  When a federal cause of action is brought under 42 U.S.C. § 1983,

4    "the relation back provisions of state law, rather than [Federal Rule of Civil Procedure] 15(c)

5    govern[.]"  *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989); *see, e.g.*, *Garland*,

6    2013 WL 4198278, at *2.  An amended complaint relates back to the original complaint under

7    California law "if the amended complaint . . . (1) rest[s] on the *same general set of facts*, (2)

8    involve[s] the *same injury*, and (3) refer[s] to the *same instrumentality*, as the original one."

9    *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 408-09 (1999) (emphasis in original); *M.G. ex rel.*

10    *Goodwin v. Cnty. of Contra Costa*, No. C 11-0453 WHA, 2013 WL 706801, at *4 (N.D. Cal. Feb.

11    26, 2013) (same).

12        Put another way, an amended complaint may "relate[ ] back to a timely filed original

13    complaint, and thus avoid[ ] the bar of the statute of limitations, only if it rests on the same general

14    set of facts and refers to the same 'offending instrumentalities,' accident and injuries as the

15    original complaint."  *Davaloo v. State Farm Ins. Co.*, 135 Cal. App. 4th 409, 415 (2005).  But

16    even if an earlier complaint rests on the same set of facts, the amended complaint may not relate

17    back unless a "reasonable defendant [would] have understood the [original] complaint to allege

18    that it was in some way responsible for plaintiff's injury[.]"  *Bell v. Tri-City Hosp. Dist.*, 196 Cal.

19    App. 3d 438, 449 (1987), *disapproved of on other grounds by State v. Super. Ct. (Bodde)*, 32 Cal.

20    4th 1234 (2004).  Thus, "[t]he relation-back doctrine is inapplicable . . . where [a plaintiff]

21    attempts to relate back an amended [complaint] to a complaint which failed to name [defendant] or

22    any Doe defendants."  *Kralow Co. v. Sully-Miller Contracting Co.*, 168 Cal. App. 3d 1029, 1035-

23    36 (1985); *see also Anderson v. Allstate Ins. Co.*, 630 F.2d 67, 683 (9th Cir. 1980) ("Under

24    California law, if a defendant is added to an amended complaint as a new defendant, and not as a

25    Doe defendant, the amendment does not relate back to the time of the original complaint.").

26        Plaintiff's FAC naming Perry and DeGuzman as defendants relates back to the timely

27    filing of the initial complaint.  First, the FAC's underlying facts arise out of the same set of facts

28    alleged in the initial complaint: injuries decedent sustained during his July 21, 2013 arrest that

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

resulted in his August 19, 2013 death.  The initial complaint brought a Section 1983 claim against Doe Defendants because "[t]he officers responsible for the death of [Decedent] are unidentified due to the refusal of the City of San Leandro Police Department to release the report of the incident" and noted that Plaintiff would "seek leave to amend this complaint to allege the names and capacities of the law enforcement personnel[.]"  (Dkt. No. 1 ¶¶ 3-4.)  The incident report and coroner's investigation report having been released, the FAC includes further details of the same incident.  Thus, the FAC and initial complaint involve the same "accident and injuries" as the original complaint which suffices for relation back.  *Davaloo*, 135 Cal. App. 4th at 415.  While the FAC explicitly brings claims against the two Officer Defendants, the initial complaint's allegations referred to the officers involved in Decedent's July 2013 arrest, listed Doe defendants in the case caption, and expressly noted that their true names and identities would be added.  (*See* Dkt. No. 1 ¶¶ 3-4.)  The FAC claims against the Officer Defendants therefore relate back to the initial complaint against the Does.  *Cf. Krakow*, 168 Cal. App. 3d at 1035-36.

Defendants' arguments to the contrary are unpersuasive.  Defendants contend that the FAC fails to allege that Plaintiff was unaware of the Officer Defendants' identities.  But that is precisely what the initial complaint alleged.  (*See* Dkt. No. 1 ¶¶ 3-4.)  Defendants also note that Plaintiff's counsel attempted to file a California government claim related to the same incident involving Decedent's arrest, and if Plaintiff had time to utilize the government claim filing procedures, he must have had enough time to determine the true identities of the Officer Defendants before the limitations period expired.[2]  The government tort claim did not name individual officers, indicated

---

[2] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Judicial notice is appropriate for "matters of public record."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Here, Defendants request that the Court take judicial notice of three documents related to an administrative government tort claim that Plaintiff's counsel filed, including the claim itself, correspondence from the City claims administrator to Plaintiff's counsel, and the City's notice rejecting the claim.  (Dkt. No. 19.)  It is well established that the Court may take judicial notice of records from other proceedings not to credit the truth of the allegations or facts set forth therein, but rather "for purposes of noticing the existence of the [prior] lawsuit, the claims made in the lawsuit, and the fact that various documents were filed therein."  *McMunigal v. Bloch*, No. C 1002765 SI, 2010 WL 5399219, at *2 (N.D. Cal. Dec. 23, 2010) (citation omitted).  To that end, district courts in California have taken judicial notice of similar tort claims and the city's rejection of such claims.  *See, e.g.*, *Shaw v. City of*

that the San Leandro Police Department had given no explanation for the incident, and claimed—just as the initial complaint in this action—that the department had been withholding the incident report. (Dkt. No. 19-1.)  The City's letter rejecting the claim did not reveal the officers' identities either. (Dkt. Nos. 19-1, 19-2.)  To the contrary, as of the filing of the initial complaint, the City was still withholding the incident report, which caused Plaintiff to file suit without knowing the officers' names.  Thus, the government tort claim does not suggest, let alone establish, that Plaintiff's claims are now time-barred.  Because the FAC claims relate back to the initial complaint's allegations, Plaintiff's claims against the Officer Defendants are not barred by the statute of limitations.

2.   *Sufficiency of the Allegations*

To state a claim under Section 1983, a complaint "must both (1) allege the deprivation of a right secured by the federal Constitution or a statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).  Defendants appear to concede that the FAC adequately alleges the second element.  However, they take issue with whether—or more appropriately, how—the FAC adequately alleges a constitutional deprivation.  As currently written, the FAC fails to comply with Rule 8(a).

It appears that Plaintiff invokes two different underlying constitutional violations—the Fourth and Fourteenth Amendments—but the FAC does not clarify the theory behind each alleged violation.  Moreover, it is unclear whether Plaintiff is asserting the claim on behalf of Decedent and/or Decedent's estate, on his own behalf, or both: on the one hand, the FAC alleges that the Officer Defendants interfered with *Decedent's* constitutional rights (Dkt. No. 1 ¶ 11), but on the other, the claim alleges that *Plaintiff*—not decedent—suffered damages as a result (*id.* ¶ 12), and

*Porterville*, No. 1:15-cv-00671-SKO, 2015 WL 3795026, at *4 (E.D. Cal. June 17, 2015); *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1042 (E.D. Cal. 2010).  Plaintiff does not contest the authenticity of the documents; instead, he only offers that the documents "have nothing to do with the merits of plaintiff's complaint in this court." (Dkt. No. 23 at 2.)  And while the government tort claim was filed by Fiodor Filipov, not Plaintiff, in the initial complaint Plaintiff appeared by and through Filipov and the tort action was filed by the same Plaintiff's counsel. (Dkt. No. 1 ¶ 2.)  The Court will therefore take judicial notice of Exhibits A through C, as Defendants request.

United States District Court
Northern District of California

1    that *Plaintiff* suffered the consequential loss of his familial relationship with Decedent (*id.* ¶ 7).

2    Plaintiff's opposition does not clarify either issue.  As written, the FAC therefore fails to comply

3    with Rule 8's mandate that a complaint include a short and plain statement of the claims.

4         To the extent Plaintiff is alleging a Section 1983 claim premised on violation of

5    Decedent's Fourth Amendment right to be free from excessive force, Plaintiff cannot bring such a

6    claim on his own behalf.  *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th

7    Cir. 1998) ("The general rule is that only the person whose Fourth Amendment rights were

8    violated can sue to vindicate those rights.") (citation omitted); *Brown v. City & Cnty. of San*

9    *Francisco*, No. C 11-02162 LB, 2011 WL 5025138, at *2 (N.D. Cal. Oct. 20, 2011) (describing

10   survivor's rights to bring Section 1983 claims following decedent's death from excessive force by

11   police).  Indeed, Plaintiff fails to respond to Defendants' argument that no such claim is available

12   and thus concedes that such is the case.  *See Ardente v. Shanley*, No. 07-4479 MHP, 2010 WL

13   546485, at *6 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to respond to this argument and therefore

14   concedes it through silence.").  The Court therefore grants Defendants' motion to dismiss any

15   direct claim by Plaintiff for violation of Decedent's Fourth Amendment rights.

16        A plaintiff may, however, assert a Fourth Amendment claim on a decedent's behalf to the

17   extent that California law authorizes a survival action.  *Moreland*, 159 F.3d at 369 ("[T]he

18   survivors of an individual killed as a result of an officer's excessive use of force may assert a

19   Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a

20   survival action.") (citations omitted).  A plaintiff must make clear in the complaint that he brings a

21   claim in a representative capacity.  *See Moreland*, 159 F.3d at 370.  California law provides for a

22   survival action: "[u]nder California law, if an injury giving rise to liability occurs before a

23   decedent's death, then the claim survives to the decedent's estate." *Tatum v. City & Cnty. of San*

24   *Francisco*, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006); *see also* Cal. Code Civ. Proc. § 337.30.  For

25   such a claim, however, the "damages recoverable are limited to the loss or damage that the

26   decedent sustained or incurred before death, including any penalties or punitive damages that the

27   decedent would have been entitled to recover had the decedent lived, and do not include damages

28   for pain, suffering, or disfigurement."  Cal. Code Civ. Proc. § 377.34.  Defendants appear to

United States District Court
Northern District of California

concede that the FAC states a claim for violation of Decedent's Fourth Amendment rights.  Still,
Plaintiff has not made clear that he brings such claim in a representative capacity, which he must
do to state a claim for relief.  *See Moreland*, 159 F.3d at 370.

A plaintiff may also bring a Section 1983 claim on his own behalf for violation of his
Fourteenth Amendment right to familial association "based on the related deprivation of their
liberty interest arising out of their relationship with [a decedent]."  *Moreland*, 159 F.3d at 371;
*Brown*, 2011 WL 5025138, at *2 (citation omitted).  "This substantive due process claim may be
asserted by both the parents and children of a person killed by law enforcement officers[,]"
*Moreland*, 159 F.3d at 371, as well as others who have alleged a sufficiently intimate association
to support Fourteenth Amendment protection, *Estate of Angel Antonio Mendoza-Saravia ex rel.
successors of interest v. Fresno Cnty. Sheriff's Dep't*, No. 1:10-cv-0618 OWW SMS, 2011 WL
720061, at *3 (E.D. Cal. Feb. 22, 2011) (contending that domestic partner of decedent had alleged
sufficient facts about their relationship to support a Fourteenth Amendment liberty interest claim
for unlawful state inference with a protected family relationship).  Any such claim must be alleged
separately from a related Fourth Amendment claim.  *See Burns v. City of Concord*, No. C 14-
00535 LB, 2014 WL 3613250, at *3 (N.D. Cal. July 22, 2014) (finding the excessive force
complaint failed to comply with Rule 8(a) and instructing the plaintiff to amend the complaint to
bring one claim on the estate's behalf for violation of the Fourth Amendment and a separate claim
for violation of survivors' Fourteenth Amendment rights to familial association).

Plaintiff argues generally that the first cause of action is sufficiently pleaded based on his
allegations that Defendants removed Decedent from his vehicle after a traffic stop, attempted to
shoot him with a Taser, restrain him, and hit him, and that his death was due to excessive and
unlawful force.  Plaintiff urges that these factual allegations are enough to put Defendants on
notice of the claim and move on to discovery to determine if the allegations are true.  But as
currently written, the FAC leaves Defendants uncertain as to what underlying constitutional
violations are alleged by Plaintiff and in what capacity.  The first cause of action is therefore
dismissed with leave to amend.  Plaintiff must separately allege Fourth Amendment claims being
brought on behalf of the estate and any Fourteenth Amendment claims brought on his own behalf.

**B.     Second Cause of Action**

The second cause of action is against the City and Chief Spagnoli for municipal liability stemming from Decedent's injuries during arrest and subsequent death.

**1.     *Improper Defendant***

Plaintiff brings the municipal liability claim against the City and Chief Spagnoli.  Where both the public entity and a municipal officer are named in a lawsuit, a court may dismiss the individual named in her official capacity as a redundant defendant.  *See Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 1986) ("An official capacity suit against a municipal officer is equivalent to a suit against the entity.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  The FAC does not allege that Spagnoli is sued in her individual capacity, and all allegations point to the contrary: the FAC alleges that she, as Chief of Police, ratified the Officer Defendants' conduct and acted as a policymaking official. (Dkt. No. 1 ¶¶ 3, 9.)  Defendants argued that the claims against Chief Spagnoli are alleged against her in her official capacity and should therefore be dismissed as redundant.  Plaintiff did not oppose that argument.  The Court will therefore dismiss the second cause of action alleged against Chief Spagnoli.  If Plaintiff wishes to amend to bring suit against Chief Spagnoli in her individual capacity, the amended complaint must specify that she is sued in her individual capacity and must include sufficient facts to render her individual liability plausible.

**2.     *Sufficiency of Allegations***

To state a claim for municipal liability, a plaintiff must show (1) he possessed a constitutional right of which he was deprived; (2) the entity had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation.  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  A plaintiff must plead sufficient facts regarding the specific nature of the alleged policy, custom, or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief.  *See AE v. Cnty. of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012).  It is not sufficient to merely allege that a policy or custom existed or that individual officers' wrongdoing conformed to that policy or custom.  *Id.* at 636-38.

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    With respect to the first element—violation of a constitutional right—the municipal

2    liability claim suffers from the same defect as the claims against the Officer Defendants.  Plaintiff

3    appears to premise the municipal liability claim on the Fourth and Fourteenth Amendment rights

4    to be free from excessive force.  This certainly sounds in the Fourth Amendment.  Defendants

5    argue that there is no applicable Fourteenth Amendment right to be free from excessive force and

6    unlawful seizure, and Plaintiff does not appear to dispute that the municipal liability claim for

7    excessive force does not state a claim under the Fourteenth Amendment.  Thus, Plaintiff's

8    municipal liability claim may only proceed to the extent that it alleges a violation of the Fourth

9    Amendment on behalf of the estate.

10   A complaint must also include sufficient facts to plausibly establish that the entity had a

11   policy that was the moving force behind that Fourth Amendment violation.  *See Plumeau*, 130

12   F.3d at 438.  A plaintiff may allege municipal liability in any of three ways: (1) by alleging that

13   there was a formal policy or longstanding practice or custom that constitutes the standard

14   operating procedure of the local government entity; (2) that the individual who committed the

15   constitutional tort was an official with final policy-making authority and thus the challenged

16   action itself was an act of government policy; or (3) that an official with final policy-making

17   authority ratified a subordinate's unconstitutional conduct and the basis for it.  *Menotti v. City of*

18   *Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citing *Ulrich v. City & Cnty. of San Francisco*, 308

19   F.3d 968, 984 (9th Cir. 2002)).

20   Here, Plaintiff contends that he has adequately alleged all three bases for municipal

21   liability.  First, Plaintiff argues that he has adequately alleged municipal liability because the FAC

22   alleges that Chief Spagnoli committed the constitutional tort in her role as official policymaker.

23   But the FAC does not allege that Chief Spagnoli is the individual who committed the

24   constitutional tort at issue here—that is, that she was the person who used unlawful, excessive

25   force in connection with arresting Decedent.  Thus, this path to liability is a non-starter.

26   Second, Plaintiff contends that the FAC adequately pleads municipal liability through

27   ratification.  Municipal liability based on a policymaker's ratification of unconstitutional conduct

28   may be premised on a single incident of wrongdoing.  *See Trevino*, 99 F.3d at 918.  However, to

plausibly plead ratification, the plaintiff must allege facts that show that "the authorized policymakers approve a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (internal quotation marks and citation omitted). The allegations must indicate that the policymaker obtained knowledge of the constitutional violations "before [they] ceased" and nonetheless approved the decision. *Id.* Put another way, ratification requires "a conscious, affirmative choice" on the part of the authorized policymaker. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010) (quotation marks and citation omitted). Thus, "[m]ere refusal to overrule a subordinate's completed act does not constitute approval." *Id.* at 1239; *see also Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1189 (D. Haw. 2003) ("The Ninth Circuit appears to require something more than a failure to reprimand to establish . . . ratification[.]").

Plaintiff states that Defendants knew that the Officer Defendants had engaged in misconduct before and that Defendants "ratified" and "condoned" the Officer Defendants' conduct with respect to Decedent. (Dkt. No 17 ¶¶ 14-15.) Neither allegation is sufficient to plausibly suggest ratification. With respect to knowledge of earlier misconduct, there are no facts describing the type of misconduct such that the Court reasonably could infer that Chief Spagnoli and the City ratified the improper use of chokeholds. Nor are the conclusory allegations of ratification enough, as Plaintiff provides no facts to support this conclusion. *See, e.g.*, *Linder v. City of Emeryville*, No. C-13-01934 EDL, 2013 WL 5609319, at *3 (N.D. Cal. Oct. 11, 2013) (concluding that complaint failed to plausibly allege ratification where it alleged that the incident was not thoroughly investigated, those responsible were not punished, and procedures and policies were not modified after the incident because there were "no facts to support these conclusions" and no factual allegations that the use of force "was ratified by any final policymaker"). Lastly, Plaintiff's allegation of the City's withholding of the police is insufficient, as it does not on its own without more plausibly suggest ratification. *See Clouthier*, 591 F.3d at 1250. While Plaintiff insists that the Court must accept as true the allegations of ratification on a motion to dismiss, it is well established that the Court need not accept as true legal conclusions couched as factual allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (noting that the court need not accept legal conclusions, unwarranted deductions of fact, or unreasonably

United States District Court
Northern District of California

1    inferences as true).  Accordingly, the FAC fails to plausibly allege ratification.

2          Lastly, a plaintiff may establish municipal liability by showing a policy, custom or

3    practice.  An isolated incident of unconstitutional action by a non-policymaking employee is

4    insufficient to allege a municipal policy or custom.  *See McDade v. West*, 223 F.3d 1135, 1141

5    (9th Cir. 2000); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper

6    custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices

7    of sufficient duration, frequency and consistency that the conduct has become a traditional method

8    of carrying out policy[.]").  Instead, a plaintiff must allege facts sufficient to plausibly establish the

9    municipality's deliberate indifference—that is, that it was "on actual or constructive notice that its

10   omissions would likely result in a constitutional violation."  *Gibson v. Cnty. of Washoe, Nev.*, 290

11   F.3d 1175, (9th Cir. 2002).  In the FAC, Plaintiff alleges that Chief Spagnoli

12              and other high ranking police supervisors knew of the repeated
13              misconduct of defendants Perry and DeGuzman [and] were aware
             or should have been aware of prior instances of people dying
14           during the course of arrest by the improper use of control holds,
             carotid restraint and restraining tactics that resulted in the
15           positional asphyxiation of individuals taken into custody.

16   (Dkt. No. 17 ¶ 14.)  The allegation that Defendants knew of the Officer Defendants' "misconduct"

17   is vague and does not give rise to a plausible inference of deliberate indifference.  *See Jaa v. City

18   of Dublin*, No. 14-cv-03260-WHO, 2014 WL 6986234, at *3 (N.D. Cal. Dec. 10, 2014) (finding

19   insufficient an allegation that the City was deliberately indifference to "repeated acts of police

20   misconduct").  What was their misconduct?  For example, if Perry and DeGuzman were known to

21   have altered police reports, that would not necessarily put the City on notice of the probability that

22   they would violate an arrestee's Fourth Amendment right to be free from excessive force.  While

23   the Court must draw inferences in Plaintiff's favor, the Court can draw no plausible inference of

24   deliberate indifference to Fourth Amendment violations from this vague allegation.

25          However, the allegation that the City was aware of prior instances of people dying due to

26   control holds is enough to establish deliberate indifference, which can demonstrate a de facto

27   policy.  A plaintiff alleging a *Monell* claim based on inadequate training must allege facts

28   sufficient to plausibly show that the municipality had a training policy that results in deliberate

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1  indifference, which generally involves showing a pattern of similar constitutional violations.  *See*

2  *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted); *Williams v. Cnty. of Alameda*, 26

3  F. Supp. 3d 925, 947 (N.D. Cal. 2014).  The allegations must show that "the need for more or

4  different training is so obvious, and the inadequacy so likely to result in the violation of

5  constitutional rights" to demonstrate deliberate indifference.  *Clouthier*, 591 F.3d at 1249 (citation

6  omitted).  The FAC alleges just enough to establish deliberate indifference due to inadequate

7  training.  Plaintiff identifies both the particular type of training that was insufficient and a pattern

8  of similar violations: he alleges that the City failed to train its employees, including the Officer

9  Defendants, in "standards for arrest and detention, including limitations on the use of force that

10  can reasonably be foreseen to cause death" (Dkt. No. 17 ¶ 9), and that the City had "knowledge of

11  prior instances of people dying during the course of arrest by the improper use of control holds,

12  carotid restraint and restraining tactics that resulted in the positional asphyxiation of individuals

13  taken into custody." (*Id.*)  While the FAC does not include facts describing what those similar

14  instances are, the allegation that they have occurred is enough to eke out a claim at this stage of

15  the litigation. Thus, the FAC plausibly alleges municipal liability deliberate indifference through

16  inadequate training.

17       In short, the FAC adequately pleads an underlying constitutional violation—the Fourth

18  Amendment only, not the Fourteenth—and sufficiently pleads municipal liability through

19  inadequate training, but not ratification or the acts of a policy-maker.  The Court therefore declines

20  to dismiss the second cause of action.  Plaintiff may, however, amend the second cause of action

21  to add facts to support his currently inadequate theories of municipal liability.

## CONCLUSION

23       For the reasons described above, the Court GRANTS IN PART and DENIES IN PART

24  Defendants' motion to dismiss.  The Officer Defendants' statute of limitations motion is denied.

25  The first cause of action is nonetheless dismissed with leave to amend to separately allege any

26  claims on behalf of the estate and any claims on behalf of Plaintiff personally, as well as to

27  identify the constitutional basis for each claim. The Court dismisses the second cause of action

28  with respect to Chief Spagnoli, but Plaintiff shall have leave to amend to bring suit against her in

her individual capacity.  As currently pled, the second cause of action may only proceed based on a Fourth Amendment violation arising from an inadequate training/deliberate indifference theory of municipal liability, but plaintiff shall have leave to amend to add allegations regarding his alternative theories of municipal liability claims.  Plaintiff shall file his amended complaint on or before January 15, 2016.  The case management conference scheduled for January 28, 2016 shall remain on calendar as Plaintiff has pleaded a claim for municipal liability and as it is apparent that he can, at a minimum, plead a Fourth Amendment excessive force claim against the Officer Defendants on behalf of the estate.

This Order disposes of Docket No. 18.

**IT IS SO ORDERED.**

Dated: January 4, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge